OKOS, Appellant,

v.

OKOS, Appellee.

[Cite as *Okos v. Okos* (2000), 137 Ohio App.3d 563.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–98–1382.

Decided April 7, 2000.

564

Richard A. Shinaberry, for appellant.

*Peter L. Moran,* for appellee.

---

HANDWORK, Judge.

This is an appeal from a September 30, 1998 judgment entry of the Lucas County Court of Common Pleas, Domestic Relations Division, in which the court granted a divorce to appellant, Dawn M. Okos, and appellee, Joseph R. Okos, and entered orders regarding property division and alimony. Appellant has presented five assignments of error:

"I. The trial court erred in classifying appellee's retirement disability benefit as his separate property and failing to award appellant a share of that marital asset.

"II. The trial court erred in classifying the military credit portion of appellee's retirement disability benefit as his separate property and failing to award appellant a share of that marital asset.

"III. The trial court erred in failing to make a final determination of the need for spousal support reserving jurisdiction to award spousal support at a later time.

"IV. The trial court erred in declaring certain funds, which had been given to or inherited by appellant, and which had been used to improve the family home, to be marital property.

"V. The trial court erred in arbitrarily selecting a value of the marital residence instead of the appraised value."

In support of her first assignment of error, appellant says that the trial court erred when it failed to classify appellee's pension as marital property and to award her a portion of it in the property division. She acknowledges that the Supreme Court of Ohio has previously ruled that a disability payment is not marital property. *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292, 1294–1295. However, she says in this case it is irrelevant that appellee is receiving his pension as a disability pension because appellee was "equally eligible for ordinary retirement, in exactly the same amount, with the sole difference being that there were tax advantages from taking the retirement as disability." Appellant implies throughout her argument that appellee had a choice regarding whether he would receive an ordinary retirement pension or a disability retirement pension, and that he chose the disability pension because it had tax advantages.

Appellee responds that the trial court did not abuse its discretion when it did not consider his pension as marital property. He says that the Supreme Court of Ohio has recognized that disability payments are an exception to the general rule

that pensions are marital property. He points to the testimony he provided at trial as proof that he receives disability payments. Appellant testified at trial that the basis for his retirement is "a herniated disk with two others pushing in my back." He testified that he injured his back four times in the course of his service as a policeman. When he was asked how he was able to retire he answered:

"I had the full time of service in, a little over 25 years. I had been off a year trying to get my back straightened around. I went through numerous procedures and epidurals, and then it wasn't getting any better so I applied to the pension board, I believe it was in October of '94, and then a ruling came down in January of '95 that awarded me a pension, and at that time—by the time the papers got to me, it was in February that I signed the papers for retirement in '95."

He was asked how it was determined and by whom that he would get disability retirement pay. He replied:

"The City pulled me off the payroll, so what I did is during the interim, like I said, I had done that, I had had my 25 years of service and had the age for retirement, so unbeknownst to me at that time, the pension board only has two types of disabilities, it's either—it's like a 60 percent permanent partial or 100 percent. The reason I got 60 percent is because I had the 25 years of service to equate out what my regular pension would have been."

After further questioning from the court and from his own trial counsel, appellee confirmed that he is receiving the same amount for disability as he would have received under a regular pension for years served. He also confirmed that his disability pay is not taxed, but if he received a regular pension it would be taxed. When appellant's trial counsel asked appellee if appellee had two choices, to take a pension or to take disability, appellee answered:

"No. When it was applied for—they take your physical stature at the time— my physical stature was such that I had back problems, so it was applied for underneath the disability form, yes."

The trial court filed a decision on September 2, 1998, in which it made a detailed explanation regarding its division of the marital property of the parties. See Appendix. The trial court subsequently filed a judgment entry on September 20, 1998 in which it entered the orders it discussed in its decision.

In 1990, the Supreme Court of Ohio made the following ruling:

"When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the

result." *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 559 N.E.2d 1292, paragraph one of the syllabus.

Within the text of the opinion, the *Hoyt* court noted, "The general rule is that pension or retirement benefits earned during the course of a marriage are marital assets and a factor to be considered not only in the division of property, but also in relationship to an award of alimony." (Footnotes omitted.) *Id.* at 178–179, 559 N.E.2d at 1294–1295. In its footnote three, the court listed exclusions, including Social Security benefits and disability retirement pay, to the general rule that pensions earned during a marriage are a marital asset. *Id.* at 178, 559 N.E.2d at 1294, fn. 3.

In 1993, the Second District Court of Appeals noted the general rule and exceptions announced by the Supreme Court of Ohio in *Hoyt*, and said:

"It is apparent that these exclusions came from an article entitled Principles and Guidelines for the Division of Property in Actions for Divorce in Ohio (Mar. 1981), 54 Ohio Bar 491, which is cited in footnote 6 to the *Hoyt* opinion. *Hoyt*, *supra*, at 179 [559 N.E.2d at 1295]. That article indicated that disability benefits are not marital property unless '*they are accepted by the retiree in lieu of retirement pay*, [in which case] they are marital property to the extent that retirement pay value is included therein.' (Emphasis ours.) Principles and Guidelines for the Division of Property in Actions for Divorce in Ohio, *supra*, 505." *Elsass v. Elsass* (Dec. 29, 1993), Greene App. Nos. 93–CA–0005 and 93–CA–0016, unreported, 1993 WL 541610.

The Second District went on to rule that in the case before it, the disability payments received by the husband from his former public employer were his separate property because the disability payments were "a form of wage continuation designed to compensate the recipient for wages that he would otherwise receive but for the disability." *Id.*

The Twelfth District Court of Appeals and the Eighth District Court of Appeals for Ohio have noted and applied the reasoning of the Second District Court of Appeals ruling in similar cases. *Fannin v. Fannin* (June 1, 1999), Preble App. No. CA98–09–015, unreported, 1999 WL 450205; *Koba v. Koba* (Dec. 19, 1996), Cuyahoga App. No. 70570, unreported, 1996 WL 732547. The Twelfth District affirmed a trial court ruling that even though a husband had a disability, the payments he received were " 'essentially all retirement benefits.' " *Fannin.* The court said that even though the husband initially received disability pay, the payments later became " 'normal retirement.' " *Id.* The court placed great emphasis on the need to evaluate the totality of the circumstances in a case and the property division in its entirety in order to decide whether the trial court's orders were equitable. It concluded that in the case before it, the division of property order was equitable. *Id.*

The Eighth District Court of Appeals affirmed a trial court's ruling that a husband's disability payments were not marital property. *Koba.* The court said, "The disability retirement benefits sought by appellant were paid to appellee as a form of wage continuation designed to compensate appellee for wages that he would have otherwise received but for his disability. Thus, appellee's disability retirement benefits are income, rather than marital assets subject to division of property." *Id.*

After carefully considering the facts in this case, we conclude that the trial court had ample evidence before it to decide that appellee's disability retirement payments were in reality a wage continuation. Even though appellee had sufficient service years to qualify for regular retirement, his testimony showed that the reason for his retirement was a disability that rendered him unable to perform police work for a full year. He was removed from the payroll and needed to replace his wages with disability retirement.

Even assuming *arguendo* that appellant is correct that appellee's pension should be considered as regular retirement and not as disability pay, we cannot conclude that the trial court abused its discretion in this case. The trial court excluded appellee's disability pension from marital property, but at the same time it excluded appellant's Social Security benefits from marital property. When the totality of the circumstances are considered, the trial court made an equitable property division order in this case. Appellant's first assignment of error is not well taken.

In support of her second assignment of error, appellant argues that a portion of appellee's disability pension "was based upon credit for military service, and that portion of his pension was taxed." She acknowledges that no testimony was taken in the trial court regarding when appellee purchased credit for his military service time to add to his years of service. She says, however, that appellee's buy-back of his military service time credit "almost certainly occurred during the marriage, from marital assets." She asks that this case be remanded to the trial court so that the trial court can treat as marital property the portion of appellee's pension that is based upon his military service and divide that asset between the parties.

Appellee responds that the only evidence admitted at trial on the issue of his military service showed that it had been accrued prior to his marriage to appellant. He says that appellant failed to meet her obligation to introduce any evidence regarding the value of his military credit.

An appellate court reviewing a trial court's factual finding on the classification of property as separate or marital according to R.C. 3105.171 will not reverse the trial court's decision unless it is against the manifest weight of the

evidence. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989, 992. Generally, the party seeking to have property declared separate property has the burden of proof by a preponderance of the evidence. *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300, 1301–1302. Regardless of the characterization assigned to property, "the actual distribution of the asset may be properly reviewed under the more deferential abuse of discretion standard." *Bennett v. Bennett* (Aug. 19, 1999), Licking App. No. 99CA4, unreported, 1999 WL 668731.

■ In this case, the weight of the evidence supports the trial court's ruling that the portion of appellee's pension attributable to his military service is his separate property. The only testimony in this case regarding the portion of appellee's pension that is attributable to his military service credit came from appellee when he was called on cross-examination by appellant. Appellee testified that his military service took place before his marriage to appellee. He also testified:

"It's—I think the—I think what you're talking about, and I'm not positive, is that I had 25–and–a–half years as a patrolman and I bought my military time, so they taxed me on my military time and it's—it's combined.

" * * *

"Sir, I had 25–and–a–half years and I bought my military time to add it up to like almost 29–and–a–half years, yes."

He testified that he did not know for sure the value of that portion of his pension, but that it was a very small portion. Appellant did not ask appellee any other questions to establish when appellee purchased the military time, the source of the money he used to buy the time, or the actual dollar value of that portion of his pension.

Under the circumstances in this case, the only evidence presented showed that appellee's military service credit accrued prior to the marriage, making it separate property. See R.C. 3105.171(A)(6). Appellant raised the issue through cross-examination of appellee and therefore had the burden to ask enough questions to produce sufficient evidence to show not only when the service credit accrued, but when appellee purchased back the credit, the source of the funds he used for the purchase, and the dollar value of that portion of his pension. Appellant now asks this court to engage in speculation regarding the information she did not pursue at trial and complains that the trial court did not engage in that same speculation. The trial court made a reasonable ruling based upon the manifest weight of the evidence that was presented. The trial court had no obligation to speculate regarding the nature of evidence that was not submitted at

trial. See *Larkey v. Larkey* (Nov. 4, 1999), Cuyahoga App. No. 74765, unreported, 1999 WL 1000688.

■ Even assuming *arguendo* that the trial court should have ruled that the military credit portion of appellee's pension is a marital asset, appellant has failed to provide the necessary information (such as the value of the portion of the pension attributable to appellee's military service credit) to show that the trial court abused its discretion when it awarded that portion to appellee as separate property or that the award resulted in an inequitable property distribution. Accordingly, appellant's second assignment of error is not well taken and is denied.

In support of her third assignment of error, appellant argues that the trial court erred when it ruled that she was not entitled to spousal support at the present time, yet it reserved jurisdiction to modify its order regarding no spousal support for five years. Appellant says this court has previously ruled that a trial court cannot reserve jurisdiction to modify spousal support when no spousal support is initially awarded and cites an unreported decision from 1994, *Hall v. Hall* (Feb. 11, 1994), Wood App. No. 93WD045, unreported, 1994 WL 39051. She asks that this court remand the case for the trial court to make a new ruling on spousal support.

Appellee responds that the Eighth District Court of Appeals has ruled that a trial court can retain jurisdiction to modify spousal support for a reasonable period of time. *Gerrick v. Gerrick* (Sept. 24, 1998), Cuyahoga App. No. 73835, unreported, 1998 WL 655488. Appellee says that the trial court did not abuse its discretion when it retained jurisdiction for five years to modify spousal support, and that the retention of jurisdiction was actually to appellant's advantage, since the facts in the case at the time of the divorce did not support any award of spousal support at all.

The divorce decree issued by the Lucas County Court of Common Pleas, Domestic Division, in this case contained the following statements regarding spousal support:

"Section 3105.18(B) of the Revised Code governs the award of spousal support. This section sets forth thirteen (13) factors for this Court to consider, plus any other factor that is deemed to be relevant and equitable. In making a determination of spousal support, this Court must consider all of those factors, and not consider any one factor taken in isolation. *Kaechele v. Kaechele,* 35 Ohio St.3d 93 [518 N.E.2d 1197] (1988).

"The purpose of spousal support is to provide for the financial needs of the ex-spouse, in accordance with the ability of the other spouse to pay such support. *Wolfe v. Wolfe,* 46 Ohio St.2d 399 [75 O.O.2d 474, 350 N.E.2d 413] (1976). A

spouse's financial need can be fully satisfied without equalization of income. Under no circumstances should spousal support be awarded simply because one spouse has the ability to pay.

"Any amount of spousal support awarded should provide for a termination point within a reasonable period of time, except in marriages of long duration, parties of advanced age, or a homemaker spouse with little opportunity to develop meaningful employment outside of the home. *Kunkle v. Kunkle,* 51 Ohio St.3d 64 [554 N.E.2d 83] (1990).

"The Court is not clear whether the Plaintiff is actually requesting that she be awarded spousal support. In any event, the Court finds that the Plaintiff has failed to establish any entitlement to an award of spousal support.

"Plaintiff is a registered nurse and has been employed on a full-time basis by Toledo Hospital for the past sixteen (16) years. She earns an hourly wage of Seventeen Dollars and Twenty-three Cents ($17.23), and receives additional income for working overtime and weekends. In 1996, her income was in excess of Thirty-five Thousand Dollars ($35,000.00). See Plaintiff's Exhibit H. In 1997, she testified she expected to earn approximately Thirty-eight Thousand Dollars ($38,000.00).

"Plaintiff testified that she has monthly living expenses of One Thousand Nine Hundred Eleven Dollars ($1,911.00), which appears to be reasonable. See Plaintiff's Exhibit U. The Court finds that the Plaintiff earns sufficient income to meet her ongoing monthly expenses.

"The Court further finds that the Plaintiff is forty-seven (47) years of age, is in good health, has completed all necessary vocational education, maintains the same relative standard of living she did when she was married and living with the Defendant, has been awarded certain liquid assets having investment potential, and has adequate retirement benefits. While this is a marriage of long duration, there is simply no basis for finding that the Plaintiff is entitled to an award of spousal support, giving due emphasis for Plaintiff's earning ability, and that fact that the Defendant is on disability retirement, although the Court acknowledges that he is capable of some employment.

"The Court expressly reserves jurisdiction to modify the non-award of spousal support within the next five (5) years. This reservation of jurisdiction shall be subject to the death of either party and Plaintiff's remarriage."

Appellant is correct that this court has previously said in an unreported, accelerated case:

"In the case before us, the court divided the marital assets equally between the parties except with regard to the retirement benefits. The court treated the retirement benefits of each party as 'streams of income' which were then awarded

to each party respectively. *The court then retained jurisdiction to determine in the future whether to award spousal support. We find that the trial court erred as a matter of law in making such an order.*

"The trial court did not make a distributive award regarding the retirement benefits as required by R.C. 3105.171. *Furthermore, the court cannot retain jurisdiction over the issue of spousal support if it does not enter an order of spousal support in the first place.*" (Emphasis added.) *Hall v. Hall* (Feb. 11, 1994), Wood App. No. 93WD045, unreported, 1994 WL 39051.

However, as appellee in this case has noted, no detailed discussion of the facts was made in that case since it was accelerated. Therefore, it is not possible to tell from the facts whether the reservation of jurisdiction was for an indefinite period of time. Our research of this issue shows that that information can be vital, and for the following reasons we agree with appellee that a trial court can reserve jurisdiction to modify spousal support orders for a limited, reasonable period of time, even if the initial order is for zero spousal support.

Currently, there is a split among the appellate courts in Ohio on the question of whether a trial court can retain jurisdiction to modify spousal support if the court chooses to award zero spousal support in the initial divorce decree. The Third District Court of Appeals first addressed the question we are considering in 1992. *Wolding v. Wolding* (1992), 82 Ohio App.3d 235, 611 N.E.2d 860. In the *Wolding* case, the trial court ruled that the husband was not required to pay spousal support at the time of the divorce because of his financial status and unemployment. The trial court did, however, reserve jurisdiction with the following order:

" '11. Based upon the current financial status of the parties, the [appellant] is not [o]rdered to pay permanent alimony to [appellee] at this time. However, the issue of alimony will remain subject to the continuing jurisdiction of this Court. In the event the [appellee] should be awarded sustenance alimony in the future, such alimony will terminate upon the death or remarriage of [appellee].' " *Id.* at 238, 611 N.E.2d at 861.

The Third District Court of Appeals rejected in *Wolding* the trial court's attempt to retain indefinite, continuing jurisdiction. The court said:

"R.C. 3105.18(D) provides that the trial court has continuing jurisdiction to modify the terms or amount of an order for periodic alimony only if it finds that the circumstances of either party have changed and the decree or separation agreement contains a provision specifically authorizing the court to make such modification. We have found nothing which authorizes a trial court to continue jurisdiction over the issue of alimony when it made a specific finding that no alimony was warranted at the time of divorce.

"In *Ressler v. Ressler* (1985), 17 Ohio St.3d 17, 18, 17 OBR 14, 15, 476 N.E.2d 1032, 1033, the Supreme Court held that 'alimony decrees should possess a degree of finality and certainty.' *We believe that divorce decrees which make a specific finding that alimony is not warranted should also possess a degree of finality and certainty:*

" 'In order to provide stability, the law look[s] with favor on the principle of "finality of judgments." The reason for this principle is that persons must be able to rely on court rulings. If courts had continuing jurisdiction to modify all decrees, there would be confusion and uncertainty.' *Bean v. Bean* (1983), 14 Ohio App.3d 358, 361, 14 OBR 462, 466, 471 N.E.2d 785, 790, citing *Popovic v. Popovic* (1975), 45 Ohio App.2d 57, 64, 74 O.O.2d 94, 98, 341 N.E.2d 341, 346.

"As recognized by the Court of Appeals for Stark County in *Norris v. Norris* (1982), 13 Ohio App.3d 248, 249, [13 OBR 310, 312, 469 N.E.2d 76, 78], the Family Law Committee of the Ohio State Bar Association, in recommending amendments to R.C. 3105.18 and 3105.65, had as one of its main objectives 'finality of decisions.'

"*We find that the trial court does not have the authority to continue jurisdiction concerning the issue of alimony in this matter where it made a specific finding that alimony was not warranted. Its attempt to reserve such jurisdiction for future consideration is error.*" (Emphasis added and footnote omitted) 82 Ohio App.3d at 239, 611 N.E.2d at 862.

In May 1994, the Fifth District Court of Appeals considered a case where the trial court did not award spousal support because it ordered the husband to make property settlement payments and to pay most of the marital debt. *Reed v. Reed* (May 20, 1994), Licking App. No. 93–CA–137, unreported, 1994 WL 250053. The trial court did not retain jurisdiction to modify spousal support. In a subsequent proceeding, the trial court found the husband in contempt because he did not pay the wife's attorney fees and did not make payments on the marital debts. As part of the contempt order, the trial court said, " 'This court retains jurisdiction to order spousal support if appropriate in the future.' " The husband appealed, arguing that since the trial court did not reserve jurisdiction to modify spousal support in the initial divorce decree, it could not reserve jurisdiction to modify spousal support in a subsequent contempt decree.

The Fifth District noted that R.C. 3105.18(E) requires a trial court to make a specific reservation of jurisdiction to modify spousal support and to find a change of circumstances before it can modify spousal support. The court then said:

"In *Wolding v. Wolding* (1992), 82 Ohio App.3d 235, 611 N.E.2d 860, the court stated in the judgment of divorce that the defendant was not required to pay alimony based on his financial status, but the issue of alimony was subject to the

continuing jurisdiction of the court. The Court of Appeals for Logan County held that a court cannot reserve jurisdiction over the issue of alimony when it makes a specific finding that alimony was not warranted at the time of the divorce. *Id.* at 239, 611 N.E.2d at 862–863.

"Accordingly, the Licking County Common Pleas Court erred in reserving jurisdiction over the issue of spousal support in the contempt judgment, after specifically finding in the divorce judgment that alimony was not appropriate." *Reed, supra.*

In 1994, we made the ruling referred to before in *Hall v. Hall* (Feb. 11, 1994), Wood App. No. 93WD045, unreported, 1994 WL 39051. In the text of our opinion, we cited the earlier decision of the Third District in *Wolding v. Wolding* (1992), 82 Ohio App.3d 235, 611 N.E.2d 860, for the proposition that a court entering a continuing spousal support order must specifically state it is reserving jurisdiction to modify the support order or it will lose jurisdiction. While we did not repeat our citation of *Wolding v. Wolding,* 82 Ohio App.3d 235, 611 N.E.2d 860, to support our ruling that a court cannot retain jurisdiction when "it does not enter an order of spousal support in the first place," our earlier citation of that case shows that we were aware of that ruling and were applying it to the case in our court.

A few months after our ruling in *Hall,* Wood App. No. 93WD045, a second viewpoint on the issue in question began to emerge. The Second District Court of Appeals of Ohio was presented with an appeal from a trial court order that provided that no spousal support would be awarded at the time of the divorce, but retained " 'the jurisdiction to modify this matter for a period of thirty-six months from the date of filing this decree.' " *Aylstock v. Bregenzer* (June 29, 1994), Montgomery App. No. 14325, unreported, 1994 WL 371330.

The husband appealed, arguing that the trial court could not retain jurisdiction to modify spousal support if no award was initially made at the time of the divorce. The Second District rejected the assignment of error, saying:

"The trial court expressly reserved jurisdiction to modify spousal support in its judgment awarding Aylstock a divorce. This was reasonable even though the trial court found no spousal support necessary at the time because of its imputation of income to Aylstock, since the imputation of income involved some uncertainty, so that actual events might prove the imputation to have been erroneously high.

"Although R.C. 3105.18(E) does not expressly provide for the modification of spousal support when no spousal support has been ordered initially in the divorce decree, it does not expressly prohibit a modification under those circumstances. Where the trial court has reserved jurisdiction for a reasonable period of time to

modify spousal support if its projection of earning ability should prove to be erroneous in the light of the changed circumstances inherent in actual subsequent experience, we conclude that it is consistent with the purposes underlying the statute to permit a modification allowing spousal support when a satisfactory showing of changed circumstances has been made.

"A contrary holding would require a trial court to award spousal support in a nominal amount to act as a predicate for its reservation of jurisdiction to increase the award in the event of changed circumstances. This would be a cumbersome procedure, since it would involve wage withholding and poundage in nominal amounts."

In 1995, the Second District considered another case in which the issue arose in a slightly different fashion. In the second case, the trial court did not grant spousal support and did not reserve jurisdiction to modify spousal support. *Harbert v. Harbert* (Nov. 1, 1995), Greene App. No. 95 CA 41, unreported, 1995 WL 643118. The wife appealed, raising as an assignment of error that the trial court abused its discretion when it failed to grant spousal support and failed to reserve jurisdiction to modify spousal support. On appeal, the Second District ruled that it could not tell from the record why the trial court had not granted spousal support and had not reserved jurisdiction. The court said that it had no basis, therefore, to decide if the trial court had abused its discretion. The court said:

"Therefore, we will retain jurisdiction and remand this matter to the trial court so that it may provide a sufficiently detailed basis for its decision not to award spousal support to Mrs. Harbert. We also ask the trial court to provide an explanation for its decision not to retain jurisdiction over spousal support as well, recognizing that the reasonableness of its refusal to retain jurisdiction may be related to the reasons for which it chose not to award support."

The case was later certified to the Supreme Court. The entry of the certification is as follows:

"96–425. Harbert v. Harbert. *Greene County,* No. 95CA41. On review of order certifying a conflict. The court determines that a conflict exists. The parties are to brief the issue found at pages 2–3 of the court of appeals' Decision and Entry dated January 31, 1996:

" 'Harbert asserts, and we agree, that our decision is in conflict with the decision of the Third District Court of Appeals in *Wolding v. Wolding* (1992), 82 Ohio App.3d 235 [611 N.E.2d 860].

" 'The issue presented is whether a trial court may retain jurisdiction to modify spousal support even though it orders no spousal support at the time of the divorce, especially where there is some uncertainty as to the parties' incomes.

*Wolding* held that a trial court is not authorized to retain jurisdiction over the issue of spousal support when it has made a specific finding that no alimony was warranted at the time of the divorce.

" 'We have held that allowing the trial court to retain jurisdiction without ordering current spousal support is · consistent with the purposes of R.C. 3105.18(E), which provides for the modification of spousal support orders where a change of circumstances has been demonstrated. We are also of the view that a contrary holding would have the undesirable effect of encouraging trial courts to award nominal spousal support, thereby unnecessarily invoking the administrative processes associated with the collection of spousal support, simply for the purpose of retaining jurisdiction.

" 'Having found that a conflict exists, we certify the following question to the Supreme Court of Ohio for review and final determination:

" 'May a trial court retain jurisdiction over the issue of spousal support if it does not order spousal support at the time of the divorce?' " *Harbert v. Harbert* (1996), 75 Ohio St.3d 1409, 661 N.E.2d 758.

The next entry relating to the certification reads:

"96–425. Harbert v. Harbert. *Greene County,* No. 95CA41. This cause is pending before the court on the certification of conflict by the Court of Appeals for Greene County. Upon consideration of appellant's application for dismissal,

"IT IS ORDERED by the court that the application for dismissal be, and hereby is, granted.

"ACCORDINGLY, IT IS FURTHER ORDERED by the court that this cause be, and hereby is, dismissed." *Harbert v. Harbert* (1996), 75 Ohio St.3d 1470, 663 N.E.2d 1298.

In 1996 (after the May 3, 1996 dismissal of the certification in the *Harbert* case), the Second District reiterated the ruling it made in *Aylstock. Sandstrom v. Sandstrom* (June 28, 1996), Montgomery App. No. 15533, unreported, 1996 WL 354925.

In the *Sandstrom* case, the trial court had initially awarded spousal support of $2,416 per month to the wife. After the divorce, the ex-husband took early retirement (because his employer was downsizing) and filed a motion to modify spousal support. The trial court granted the motion to modify and reduced spousal support to zero. The court did reserve jurisdiction to modify spousal support.

The wife appealed, arguing that "the trial court cannot, by law, retain jurisdiction over the issue of spousal support once it has suspended it in full." The Second District said that the trial court had only suspended spousal support, not

terminated it, and that the trial court could retain jurisdiction. The court said, "Any possible concern that the appellant may have concerning the power of the trial court to reinstate spousal support is thus laid to rest."

The Seventh District Court of Appeals decided two cases in 1997 in which it followed the holdings and rationale of the Second District. In the first case, *Tomovcik v. Tomovcik* (Jan. 22, 1997), Jefferson App. No. 95–JE–22, unreported, 1997 WL 28548, the trial court did not award the wife spousal support at the time of the divorce, but retained jurisdiction to modify its order after the emancipation of the parties' youngest child. The husband argued on cross-appeal that the trial court could not reserve jurisdiction since the initial support order was zero.

The Seventh District quoted the ruling from *Aylstock*. The court said, "We find this reasoning persuasive. The trial court retained jurisdiction for the purpose of determining whether spousal support should be awarded following the emancipation of the parties' youngest child and the discontinuation of child support, said event having already occurred." The court said that the husband's argument was without merit.

The second case decided by the Seventh District in 1997 involving this issue was *Labedz v. Labedz* (Dec. 30, 1997), Mahoning App. No. 96 C.A. 65, unreported, 1997 WL 816535. In that case, the trial court found that there was a need for spousal support but it did not award it at the time of the divorce "because there is a child support award and there is a cash flow problem." The court reserved jurisdiction to permit the wife to ask for spousal support during a particular month and year, the month and year that the child support order ended.

The husband appealed, arguing that the trial court could not reserve jurisdiction to modify spousal support when it made a zero award in the divorce decree. The Seventh District noted it had previously followed the Second District and said:

"In the current matter, the parties entered into a separation agreement which was recited into the record before the trial court and later made a part of the trial court's final judgment entry. Both the parties and the trial court acknowledged that appellee had a need for spousal support. However, since both the parties and the trial court also recognized that appellant had a cash flow problem and had a present child support obligation to appellee, it was agreed that a determination of the amount and term of spousal support would be delayed until appellant's child support obligation ended. Such delay represented a reasonable period of time since it was expected that the parties' remaining child would be emancipated approximately eight months after the completion of the parties' divorce proceedings.

"Clearly, the trial court retained jurisdiction over the issue of spousal support. Furthermore, a fair reading of the parties' agreement, which was recited into the record and incorporated into the trial court's judgment entry, leaves little doubt that the parties intended to revisit the issue of spousal support upon the completion of appellant's child support obligation.

"Based upon a thorough review of the record in this case, along with our decision in *Tomovcik* [*v. Tomovcik* (Jan. 22, 1997), Jefferson App. No. 95–JE–22, unreported, 1997 WL 28548], we find that the trial court did not abuse its discretion in retaining jurisdiction to address the issue of spousal support following the cessation of the child support obligation for the parties' remaining child."

As appellee has found, the Eighth District Court of Appeals has followed the reasoning of the Second District. In 1998, the trial court did not grant spousal support in the divorce decree, but reserved jurisdiction to make an award if the wife filed bankruptcy to discharge her obligation to give the husband a second mortgage on the marital residence of $10,500 with an annual interest rate of six percent. *Gerrick v. Gerrick* (Sept. 24, 1998), Cuyahoga App. No. 73835, unreported, 1998 WL 655488. The wife did file for bankruptcy and got the second mortgage discharged. The husband filed a motion to show cause in the trial court for her failure to pay the obligation for the second mortgage.

The wife appealed, arguing that "the trial court could not maintain jurisdiction over spousal support when none had been issued during the divorce decree." The Eighth District cited the *Aylstock* decision from the Second District and said, "The trial court was well within its discretionary powers to retain jurisdiction for the potential award of spousal support."

However, the Eighth District has also followed the ruling from the Third District. In November 1999, the Eighth District considered a case in which the trial court ruled, " 'Since the Defendant has failed to present evidence that would support a claim for spousal support the Court will not make such an award and will not retain jurisdiction over this issue.' " *Larkey v. Larkey* (Nov. 4, 1999), Cuyahoga App. No. 74765, unreported, 1999 WL 1000688. The wife appealed, arguing that the trial court abused its discretion when it did not retain jurisdiction to modify spousal support.

On appeal, the *Larkey* court said:

"R.C. 3105.18(E) provides that a court which issues a spousal support order does not have jurisdiction to modify the amount or terms of the spousal support unless the divorce decree contains a provision specifically authorizing the court to modify the support unless the party's circumstances have changed and the decree authorizes the court to modify the support order. However, a trial court is not

required to retain jurisdiction over the issue of spousal support. See *McLaughlin v. Cotner* (June 17, 1999), Cuyahoga App. No. 74016, unreported [1999 WL 401585], citing *Fausey v. Fausey* (Oct. 13, 1995), Montgomery App. No. 14673, unreported [1995 WL 634378]. It has been held that a trial court has no authority to retain jurisdiction over the issue of spousal support where the court makes a specific finding that spousal support is not warranted. *Wolding v. Wolding* (1992), 82 Ohio App.3d 235, 239, 611 N.E.2d 860."

In a footnote, the *Larkey* court said, "A different result was reached in *Harbert v. Harbert* (Oct. 17, 1997), Greene App. No. 96–CA–0161, unreported [1997 WL 691506]. In *Harbert*, the appellate court affirmed a decision in which the trial court made no order of spousal support, but retained jurisdiction over the issue of spousal support for a period of ten years. The appellant in *Harbert* certified a conflict with *Wolding* to the Supreme Court, but the Supreme Court later dismissed the appeal in *Harbert v. Harbert* (1996), 75 Ohio St.3d 1470, 663 N.E.2d 1298."

The *Larkey* court then continued, "In this case, the trial court made a finding that spousal support was not warranted. Under *Wolding*, the court's failure to retain jurisdiction was proper."

After considering all of the above rulings, we have concluded that it is important to note that the ruling by the Third District of Appeals in *Wolding*, 82 Ohio App.3d 235, 611 N.E.2d 860, was based upon facts showing that the trial court tried to reserve jurisdiction for the life of the parties. Under those facts, the Third District could well conclude that the order violated the principle of finality of judgments. We further note that in most of the cases where other appellate courts in Ohio ruled that trial courts can retain jurisdiction to modify spousal support even when the initial spousal support ordered is zero, the following considerations seemed to come into play: (1) the reservation of jurisdiction was for a limited time, (2) the equity of the situation at the time of the divorce would make a grant of spousal support onerous, but there was a likelihood that situation could change within the specified time, and (3) the only other alternative would be for the trial court to order a nominal amount of spousal support at the time of the divorce so it could retain jurisdiction resulting in a colossal burden of paperwork and processing for payment of a pittance.

■ We agree with the decisions of the districts that hold that a trial court can reserve jurisdiction for a limited, reasonable period of time that does not last longer than an actual award of spousal support would last, to modify spousal support, even when the initial order grants zero spousal support. This solution still provides finality in judgments but permits a court latitude to see that if the financial situations of the parties change within the first few years after the

divorce, equity can be served. Accordingly, appellant's third assignment of error is not well taken.

In support of her fourth assignment of error, appellant argues that the trial court erred when it included money she received as a gift or inherited as marital property. She says that even though she put the money into joint accounts held by herself and appellee during their marriage, the money was still traceable. She says she showed through testimony that the gift of $10,000 she received from her mother and an inheritance of $11,000 were used to improve the marital residence and to build two additional bedrooms. She says that the trial court was wrong when it said that she had a burden not only to show that the funds were put into improving the marital residence but to "trace out" the money by showing that the improvements were valued at $21,000.

Appellee responds that appellant did not present any canceled checks or receipts for materials or services purchased to prove that she spent her separate money on repairs and improvements to the marital residence. He says that there is no "accountability" and appellant's money has lost its separate identity and is therefore not traceable. He says that the trial court did not abuse its discretion when it ruled that appellant's $21,000 is marital property.

Appellee's argument is misplaced. The record supports the findings of the trial court that there is no dispute that appellant received a total of $21,000 in separate property and that she used that money to improve the marital residence. Appellee agreed to these facts in his own testimony before the trial court. Accordingly, appellant had no obligation to provide any documentation to support her testimony that she spent all of her $21,000 on improvements to the marital residence. *Russell v. Russell* (June 30, 1997), Scioto App. No. 96CA2474, unreported, 1997 WL 360568 (citing Evid.R. 602).

Nevertheless, because the trial court gave a separate reason for finding appellant's money was no longer traceable, the question remains whether the trial court was right when it ruled that the $21,000 in question is no longer the separate property of appellant. The trial court acknowledged that appellant had successfully traced the $21,000 to improvements made to the marital residence. However, the trial court said that appellant "has failed to satisfactorily trace these funds after they were used to make improvements in the marital residence." The court said:

"These funds were deposited in a joint account and became 'commingled' with the marital residence, which is a marital asset, to such an extent that the funds lost their character as separate property.

"Real estate differs from cash. Investing money into home improvements is quite different from putting money down for the purchase of real estate, or

paying down on a mortgage. In the latter situation, equity in the realty rises in direct proportion to the amount of money being paid in. For instance, had Plaintiff used the Twenty-one Thousand Dollars ($21,000.00) to pay down on the mortgage, an additional Twenty–One Thousand Dollars ($21,000.00) in additional equity would have been created, and would be directly traceable to the inheritance and the gift. However, this is not necessarily true for the costs of home improvement. In fact, it rarely is. For example installation of a new roof at a cost of Five Thousand Dollars ($5,000.00) does not increase the value of the house by Five Thousand Dollars ($5,000.00). The same would be true of any other form of home improvement. The value of the improvement is affected by several intrinsic factors such as depreciation, applicable interest rates, and the esthetics of the improvements.

"There is no dispute that the Twenty–One Thousand Dollars ($21,000.00) inherited by and gifted to the Plaintiff began as separate property. However, by investing that sum into the marital residence, it lost its separate nature; it was transmuted into marital property. The Plaintiff can trace the Twenty-one Thousand Dollars ($21,000.00) going into the marital residence, but she cannot trace it out. Indeed, no evidence whatsoever was offered as to the relationship between the value of the residence with and without the improvements made so as to allow the Plaintiff to argue that the money is traceable. Simply stated, putting Twenty-one Thousand Dollars ($21,000.00) worth of improvements 'into the house' did not necessarily increase the value of the realty to the same extent. Accordingly, the Court finds that the Ten Thousand Dollar ($10,000.00) gift made to the Plaintiff, and the Eleven Thousand Dollar ($11,000.00) inheritance of the Plaintiff became marital property once invested into the residence in the form of unspecified improvements.

"Plaintiff cannot rely upon the case of *Cataline v. Cataline,* S93–10 (Ct. of App. Sandusky Co. 1993) [1993 WL 452093] ). That decision involved separate property in the form of cash deposited into a spouse's account, later commingled with marital funds. The Court found that money, being a fungible commodity, never loses its character. As long as non-marital property is traceable, it remains separate property. However, this Court believes that a different situation is presented when money is converted into non-fungible assets such as real estate improvements. The value of this asset now becomes affected by several extrinsic factors over which the original owner has no control. For this reason, this Court finds that the reasoning of the *Cataline* decision would not apply to the particular facts of this case."

The legislature of Ohio has defined separate property as follows:

"(A)(6)(a) 'Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

"(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

"(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

"(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

"(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;

"(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;

"(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;

"(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

"(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.

"(B) In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest." R.C. 3105.171.

As we previously noted in our discussion of appellant's second assignment of error, Ohio courts have consistently ruled that the effect of the above-quoted statutory provisions is to make the initial determination by a trial court that an asset is separate or marital property a factual finding that will not be reversed unless it against the manifest weight of the evidence. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989, 992.

In this case, we agree with appellant that the trial court's finding that her $21,000 is no longer separate property is against the manifest weight of the evidence. The legislature of Ohio has made it clear that "commingling of

separate property with other property *of any type* does not destroy the identity of the separate property as separate property, *except when the separate property is not traceable.*" (Emphasis added.) R.C. 3105.171(A)(6)(b).

In this case, there is no difficulty in finding that the monetary gifts totaling $21,000 were separate property. In addition, there is no difficulty in tracing the separate property from the home improvements back to the source, the monetary gift and inheritance appellant received from her family members. All parties agree that even though appellant put the money into a joint account, the money was taken from the account and was used to built two additional bedrooms and to make other improvements to the marital home.

The true concern expressed by the trial court was not that it was not clear where the money used to make the home improvements and room additions came from (*i.e.,* whether it was traceable), but that the value received for the money spent may not equal the total amount of the money that was spent. The concern expressed by the trial court does not change the nature of the property; it remains the separate property of appellant.

In addition, this court has not found any evidence presented to the trial court in this case regarding the theory espoused by the trial court that the value of the home improvements could not possibly match the value of the actual dollars invested in those improvements. In fact, the trial court itself noted that no evidence had been introduced to show the difference in the value of the home before the improvements were made using appellant's separate property and the value of the home after the improvements were made. The only evidence presented at trial regarding the value of the separate property was that it totaled $21,000. Appellant is therefore entitled to have that amount awarded to her as separate property. See *Barkley,* 119 Ohio App.3d at 166, 694 N.E.2d at 996–997 (trial court ruling that husband's separate property was full amount of money spent on home improvements not abuse of discretion when wife did not give evidence of difference in value of house before and after the improvements). Appellant's fourth assignment of error is well taken.

■ In support of her fifth assignment of error, appellant argues that the trial court erred by arbitrarily assigning a value to the marital residence, rather than adopting the value she submitted through the testimony of a certified appraiser. Appellant says that it makes no difference that appellee testified that he believed the house had the particular value that the court eventually adopted. She argues that appellee's opinion is not credible on this issue because he is not an expert on real estate values as is the witness she provided. She concludes, "In the absence of a rational basis for the court's determination, the decision should be reversed, and the trial court should be directed to revalue the real estate at $192,500 and revise the distribution of property accordingly."

Appellee responds that the trial could reasonably accept his testimony on the true value of the marital residence. He says that he provided detailed testimony about repairs that needed to be done to the house including fixing the roof, patching cracks in some of the floors where water seeps in, replacing the kitchen counters, replacing the dishwasher and fixing the deck.

Appellant is in essence arguing that appellee is not a credible witness on the question of the value of the marital residence because appellee is not an expert in real estate appraisal. The Supreme Court of Ohio has ruled that while the general rule is that one must qualify as an expert before testifying about the value of real estate:

"As an exception to the general rule, an owner is permitted to testify concerning the value of his property without being qualified as an expert, because he is presumed to be familiar with it from having purchased or dealt with it. *Bishop v. East Ohio Gas Co.* (1944), 143 Ohio St. 541, 28 O.O. 470, 56 N.E.2d 164." *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 605 N.E.2d 936, paragraph two of the syllabus.

The trial court was in the best position to judge the credibility of the witnesses, and was free to believe appellee's testimony versus the testimony of the appraiser hired by appellant. Appellant's fifth assignment of error is not well taken.

The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed in part and affirmed in part. This cause is remanded to permit the trial court to enter a new property division order in compliance with this decision. Appellant and appellee are each ordered to pay one-half of the court costs of this appeal.

*Judgment reversed in part*
*and affirmed in part.*

KNEPPER, P.J., and PIETRYKOWSKI, J., concur.

### APPENDIX

The trial court's opinion contained the following relevant analysis regarding the division of marital property:

The marital estate consists of the following assets, valued as shown:

| Marital Asset | Value |
| --- | --- |
| Equity in the residence and acreage | $188,750.00 [1] |

---

[1]. Defendant argues that the value of the property is affected by the condition of the property; certain repairs are needed (unspecified) and there is an underground oil storage tank that must be removed. The court finds that these conditions were considered in the appraisals and do not impact upon the court's finding as to the value of the property.

| | | |
|---|---|---|
| Less existing mortgages | − 31,518.00 | |
| Net equity in marital residence and acreage | 157,232.00 | |
| Defendant's deferred compensation | 38,144.00 | (9/97) |
| Cash surrender value of Defendant's New York Life insurance policy | 1,319.00 | (4/97) |
| Cash surrender value of Defendant's Western & Southern Life insurance policy | 5,437.00 | (2/97) |
| Cash surrender value of Plaintiff's Western & Southern Life insurance policy | 4,469.00 | (9/97) |
| Plaintiff's credit union account | 2,550.00 | (12/97) |
| 1995 Buick automobile | 17,000.00 | (12/97) |
| 1990 Ford Aerostar van | 5,325.00 | (12/97) |
| Defendant's 401(K) account | 55,050.00 | (6/97) |
| Defendant's Putnam Investors account | 6,125.00 | (9/97) |
| Defendants Dreyfus money market account | 3,537.00 | (6/97) |
| Defendant's Fifth Third stock | 1,452.00 | (9/97) |
| Defendant's credit union account | 200.00 | (12/97) |
| Plaintiff's Aetna annuity | 17,593.00 | (3/97) |
| Plaintiff's Toledo Hospital pension | 19,500.00 [2] | (12/97) |

The court finds that the total value of the marital estate as set forth above is $334,933.

The court further finds that the marital estate does not include a boat with a trailer, certain guns, a comic book collection, and a sports card collection, all of which the parties agree shall be given to their son. Nor does the marital estate include a compressor and a saw, which the parties agree was given to the defendant.

The court further finds that the defendant is currently receiving disability retirement payments from the Police and Firemen's Disability Pension Fund ("PFDPF"). He testified that he sustained a back injury in 1995. At that time he was eligible to receive retirement age and service benefits from the PFDPF due to his age and years of service. However, he opted for disability retirement because of the relative tax benefits.[3]

---

**2.** The value of the Toledo Hospital Retirement Plan for the plaintiff (plaintiff's Exhibit O) is ambiguous; four present values are shown ranging from a low of $8,396 to a high of $22,289. The court showed plaintiff's Exhibit O to David Kelly, the expert witness called by the defendant to testify as to the current value of plaintiff's Social Security benefits. Mr. Kelly testified that in his opinion the current value of the plaintiff's Toledo Hospital Retirement Plan was somewhere between $17,000 and $22,000, probably in the middle of that range. In response to a specific question from the court, Mr. Kelly testified that he would be comfortable with a present value figure of $19,500, which is the value accepted by the court.

**3.** Once the defendant opted to take disability benefits he cannot convert to retirement age and service benefits. See R.C. 742.37(C)(8).

As a general rule, pension plans must be evaluated and the value included in the computation of the marital estate. However, excluded from this general category are disability retirement benefits. *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292, 1294–1295. The basis for the exclusion is that the disability is being received in lieu of income.

The court further finds that the value of a spouse's future Social Security benefits are also excluded from the marital estate. *Id.* Some courts, including this court, have applied a rule of fairness under which potential Social Security benefits are considered where one spouse is a participant in a public retirement plan, and does not participate in the Social Security system. Under such circumstances, the Social Security exclusion has a prejudicial effect upon public employees, *i.e.*, the full value of a public pension is considered marital property, whereas a non-public sector employee's Social Security contributions are not considered marital property under federal law, Section 407(a), Title 42, U.S. Code, and in accordance with the *Hoyt* decision. Where the spouse is receiving a disability retirement resulting from public sector employment, then this rule of fairness would not apply as that disability retirement fund is not considered marital property. Accordingly, the marital estate does not include the value of the defendant's disability pension, nor the value of the plaintiff's potential Social Security benefits.

The court finds that the marital estate of the parties should be divided in the following manner:

| Plaintiff | Defendant |
| --- | --- |
| * ½ equity in the marital residence | * ½ interest in the marital residence |
| * ½ of the 401(K) account | * ½ of the 401(K) account |
| * Aetna annuity | * Deferred compensation account |
| * Toledo Hospital pension | * Defendant's New York Life insurance policy |
| * 1995 Buick | |
| * Plaintiff's credit union account | * Defendant's Western & Southern life insurance policy |
| * Plaintiff's Western & Southern life insurance policy | * 1990 Ford Aerostar van |
| | * Putnam Investor's account |
| | * Dreyfus money market account |
| | * Fifth Third stock |
| | * Defendant's credit union account |

The court further finds that the value of the marital estate awarded to the plaintiff totals $167,253; the value of the marital estate awarded to the defendant totals $167,680. In making the distribution of the marital assets, the court has

considered each of the factors set forth in R.C. 3105.171(F). The court finds that the distribution of the assets contained in the marital estate is fair and reasonable as each party is receiving a relatively equal share of the marital assets with an appropriate distribution of liquidity and tax benefits.

The defendant testified that he wanted to retain the marital residence and was willing to purchase plaintiff's interest therein. Plaintiff has no objection to this proposal so long as she receives one-half of the value of the present equity. Accordingly, the defendant shall have sixty days from the date of the filing of this decision to pay plaintiff the specified sum of money in exchange for which plaintiff shall execute a quit-claim deed in favor of the defendant. In the event defendant fails to pay the sum within the date specified, the property shall be listed for sale with a real estate company; the parties shall cooperate with the listing, showing, and sale of the property; no reasonable offer shall be refused. The parties shall equally share the net proceeds of sale.

The court further finds that the defendant shall be entitled to exclusive possession of the marital residence, shall pay the mortgage, taxes, utilities and insurance in a seasonable manner, and hold the plaintiff harmless therefrom.

The court further finds that until such time as the youngest child becomes emancipated, each party shall maintain all existing life insurance policies and designate the minor child as irrevocable beneficiary, unless otherwise directed by this court.

The court further finds that in the event that a QDRO is required to effectuate the division of the 401(K) account, the parties shall be equally responsible for all related costs and/or fees.

The court further finds that the only marital debt is the mortgage on the marital residence. Each party shall be responsible for their own personal debts, and hold the other harmless therefrom. The defendant shall be responsible for any indebtedness to his aunt and on a certain taxidermy bill, and hold the plaintiff harmless.

The court further finds that all household furnishings, furniture, appliances, and other items of personal property have been divided to the mutual satisfaction of the parties, as evidenced by a certain list, and a letter dated December 23, 1997, between counsel. If the transfer of all personal property specified therein has not been effectuated, such arrangements shall be made forthwith.

The court further finds that the defendant is responsible for the acts of vandalism caused to the plaintiff's automobile. This finding is based upon the fact that plaintiff had eleven flat tires within a four-month period following her vacating the marital residence, certainly evidence of malicious conduct, as opposed to accidental happenings. As the defendant was videotaped committing a

further act of vandalism on plaintiff's automobile and that no other acts of vandalism occurred thereafter, the court infers that he is responsible for all of the acts of vandalism and the damages resulting therefrom. Plaintiff testified that several sets of new tires had to be purchased for a total of $1,548, which amount was withdrawn from a joint savings account. Accordingly, defendant is responsible for repayment to the plaintiff for one-half of that amount. If this amount is not paid within thirty days of the filing of this decision, plaintiff shall be entitled to a lump sum judgment in that amount.

Plaintiff argues that the marital estate should also include the joint savings and checking accounts that existed as of the date of the filing of the complaint for divorce. It is alleged that the defendant had control of these accounts, and that all funds have been dissipated without adequate explanation. The court finds that the defendant has explained and substantiated the expenditures made from the joint accounts. He furnished the court with a list of such expenses, and canceled checks for most of those expenses, which testimony and evidence was not refuted by the plaintiff. See defendant's Exhibits M, N and O.

The court further finds that each party shall be entitled to their own clothing, jewelry, and personal effects free and clear of any claim of the other.