OPINION
Plaintiff-appellant, Edward Keyser, appeals a decision of the Butler County Common Pleas Court, Domestic Relations Division, settling property issues in his divorce action. Appellant and defendant-appellee, Sabrina Keyser, were married on June 17, 1994. Appellant filed for divorce on December 29, 1998. A contested divorce trial was held on February 29, 2000. The trial court issued a decision on March 24, 2000, finding that the parties were entitled to a divorce on the grounds of incompatibility and resolving the distribution of the parties' assets and debts. A judgment entry and decree of divorce was filed on June 2, 2000.
Appellant appeals several of the trial court's determinations regarding distribution of the parties' assets and debt. He raises the following single assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN THE OVERALL PROPERTY DISTRIBUTION AND ALLOCATION OF NON-MARITAL DEBT.
 Appellant raises several issues within his assignment of error, all relating to the trial court's resolution of the parties' property distribution and debt allocation. In a divorce action, the trial court must first determine "what constitutes marital property and what constitutes separate property." R.C. 3105.171-(B). The classification of property as separate or marital is reviewed according to the manifest weight of the evidence. Johnson v. Johnson (Sept. 27, 1999), Warren App. No. CA99-01-001, unreported, at 7. Under such review, the factual findings of the trial court relating to classification of property as marital or separate are reviewed to determine whether they are supported by competent, credible evidence. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159. The trial court has latitude to resolve issues of fact and make factual findings, if such determinations are supported by the record.
After the trial court has classified property as marital or separate, it possesses broad discretion to effect an equitable and fair division of the marital estate. Cherry v. Cherry (1981), 66 Ohio St.2d 348; Krisherv. Krisher (1992), 82 Ohio App.3d 159, 163. R.C. 3105.171(C)(1) provides that an equal division of the marital property is only the starting point for the distribution of the marital estate. When making a division of the marital property, the trial court shall consider, among other things, the assets and liabilities of the parties. R.C. 3105.171(F)(2). Whether the division of assets and liabilities is equitable depends upon more than whether the parties receive equal shares of the marital estate. The court may also look to other factors, such as the ages of the parties, the length of the marriage, the relative education of the parties, and whether one spouse contributed to and supported the other in pursuit of a higher education. Verplatse v. Verplatse (1984),17 Ohio App.3d 99, 102.
We first address appellant's argument that the trial court erred by not considering his actual ownership in a business before dividing the marital increase between the parties. The trial court found that appellant was the owner of a business known as Executive Choice Delivery. A business evaluation was performed to determine the value of appellant's business. The financial analyst who prepared the valuation had access to all of the business records and information regarding the business. The report states that appellant is the one-hundred-percent owner of the business. At trial, appellant testified that his brother owned either half or forty-nine percent of one of the two businesses that were merged to create Executive Choice. Appellant's testimony regarding his brother's ownership was inconsistent and vague and he did not present any documentary evidence to support his assertions. The determination of the existence of a partnership is a factual determination; therefore, the trial court will not be reversed if there is some competent, credible evidence going to all the essential elements of the case. SecurityPacific Nat'l. Bank v. Roulette (1986), 24 Ohio St.3d 17, 20. The trial court did not err in equally dividing the increase in the business between the parties, as there is competent, credible evidence to support a finding that the business was owned entirely by appellant.
Appellant next contends that the trial court erred by including property that was received as a gift and property in which he did not have any ownership interest as marital property. The party claiming that certain property is separate property has the burden of proving so by a preponderance of the evidence by tracing the asset back to separate property. Peck v. Peck (1994), 96 Ohio App.3d 731, 734. A trial court resolves this issue as a factual matter and an appellate court cannot reverse such a finding unless it is against the manifest weight of the evidence. Okos v. Okos (2000), 137 Ohio App.3d 563, 583.
When the parties separated, appellee took some of the household goods and moved to Florida. She estimated the value of these items at around $1,000. A professional appraisal was performed on the remaining items in the home. Although appellant presented evidence to show that certain items in the house did not belong to him, it was within the court's discretion to disregard this testimony. Although the parties both disputed whether various items left in the residence were separate or marital, the court found that all items were marital and used the total amount of the appraisal, combined with the value of the items appellee took with her, to determine the total amount of marital assets. The court then divided the value of the items between the parties. This determination was not an abuse of the trial court's discretion.
Appellant contends that the trial court erred in not properly valuing the personal property appellant took with her to Florida. Appellee testified that she took various pieces of jewelry and furs that were purchased during the marriage when she left for Florida. Appellant contends that these items have a value of approximately $31,200 and, because the court included some of his separate property in the estimate of household goods, that the value of appellee's jewelry and furs should have also been included in the calculation of household goods.
Appellant's argument regarding items that were his separate property is based solely on an inventory of items prepared by appellee. In this exhibit, appellee notes where some of the household furnishings originally came from such as the dining room table which originally belonged to appellant's mother, and a pool table appellee purchased on appellant's birthday. There was no further testimony regarding these items as appellant's separate property. On the other hand, appellee specifically presented testimony that her jewelry and furs were all gifts from appellant. Because the party seeking to establish that an item is separate property has the burden of persuasion, it was within the trial court's discretion to conclude that appellee met her burden and appellant did not.
Appellant also argues that the trial court should have considered the amount of debt outstanding on several items classified as household goods. However, appellant's testimony regarding the amounts owed and on what items was vague and confusing, and he admitted that he did not really know which items were encumbered by debt. It was within the trial court's discretion to disregard this testimony.
In his next argument, appellant contends that the trial court erred by considering his 401k account as marital property. The parties separated in June 1998 when appellee left for Florida. The divorce complaint was filed in December 1998. Appellant began contributing to a 401k account in January 1999. Appellant argues that the court should not have included the 401K account in the distribution of marital assets because the other appraisal dates the court used were closer in time to the parties' separation.
The trial court used a January 1998 appraisal to determine the value of the real estate, a June 1998 business valuation to determine the value of appellant's business and a September 1999 appraisal to determine the value of the household goods. Appellant argues that it was error for the court to use inconsistent valuation dates in determining what assets were accumulated "during the marriage" for purposes of the property division.
"As a general matter, a trial court should consistently apply the same set of dates when evaluating all marital property that is subject to division and distribution in a divorce proceeding." Herrmann v. Herrmann
(Nov. 6, 2000), Butler App. No. CA99-01-006, CA99-01-011, unreported, at 20. However, the circumstances of some cases may require the court to use different dates for different valuation purposes, so that the court need not utilize the same valuation date for each item of marital property. Id. at 20-21. The term "during the marriage" is statutorily presumed to run from the date of the marriage through the date of the final divorce hearing. R.C. 3107.171(A)(2)(a). If the court determines that using these dates would be inequitable, then "the court may select dates that it considers equitable in determining marital property." R.C. 3107.171(A)(2)(b).
We have previously held that it is within the trial court's discretion to use different valuation dates where the valuation or account balances at a certain date were the only evidence before the court. Hutchins v.Hutchins (Sept. 18, 2000), Preble App. No. CA99-11-021, unreported, at 10. In this case, the court used the only valuation dates and appraisal dates that were presented at trial to determine the value of the parties' assets. Because this was the only evidence presented, it was not an abuse of the trial court's discretion to use different dates to value the assets.
Appellant next argues that the trial court's decision to allocate payment of appellee's pre-marital debt to him was error. Prior to the parties' marriage, appellee took out a loan for approximately $15,000 with Fifth-Third Bank to open a business. The loan was refinanced during the marriage and appellant guaranteed the loan with his signature. The business was sold during the marriage for $20,000. Appellee gave the proceeds to appellant to take care of the business debts. Appellee testified that she gave the proceeds to appellant because they had a joint checking account and he handled the finances and she assumed he would take care of the business debt. Appellant testified that he paid off a tax liability and some other debts associated with the business, but did not pay off the loan. Appellant's testimony regarding how the proceeds of the business were used was vague and unsubstantiated by any documentation.
In 1997, appellant earned $344,928, in 1998 he earned $259,861 and in 1999 he earned $184,270. Appellee currently earns $21,580 annually. The court ordered appellee to be responsible for some of the smaller debts. The court allocated the majority of the debt to appellant, noting there was large disparity in the parties' income and stating that this was in the nature of an award for sustenance and support. Given the facts above relating to the nature of this debt and the disparity in the parties' income, the trial court did not abuse its discretion by allocating this debt to appellant.
Appellant's final argument concerns the trial court's distribution of the equity in the marital home. Appellant purchased a home approximately a year before the marriage with a $30,000 down payment. Appellant presented evidence and testimony at trial to establish that in 1998 the first mortgage on the property was refinanced for $264,000 and the second mortgage was refinanced for $33,000. He testified that at the time of trial, the first and second mortgages totaled approximately $296,000 to $298,000.
The trial court found that appellant used $30,000 of his pre-marital money for a down payment on the property. The trial court found the fair market value of the property was $330,000, based upon an appraisal. The trial court also found that after the marriage, the parties took out a second mortgage and made substantial improvements to the property. The trial court then stated that "[t]here are first and second mortgages on the property in the amount of Two hundred and sixty-four thousand dollars ($264,000), leaving an equity in the amount of Sixty-six thousand dollars ($66,000)." The trial court subtracted $30,000 of the equity based on appellant's down payment on the property and divided the remaining $36,000 in equity between the parties, so that appellant was ordered to pay appellee $18,000.
Appellant argues that the trial court erred in calculating the amount of the mortgages on the property. Appellee maintains that the trial court found that the only debt chargeable against her was the first mortgage of $264,000 because she presented evidence to show that appellant took out the second mortgage without her knowledge.
We agree with appellant that the language of the trial court's decision is inconsistent with the evidence presented. The trial court specifically stated that the first and second mortgages totaled $264,000, which is not an accurate statement of the facts presented. Although there is evidence in the record that would support appellee's argument that the second mortgage was taken out without her knowledge, the trial court made a finding that "the parties obtained a second mortgage and made improvements to the property." Because of the inconsistency in the trial court's decision and the evidence presented, we remand this case to the trial court to make a specific finding on whether $33,000 from the second mortgage should be included as marital debt for purposes of determining equity in the marital home, and to make a finding of the total amount of indebtedness for both mortgages which is consistent with the evidence.
Appellant's assignment of error is sustained in part as to the issue of the parties' equity in the marital home. Appellant's assignment of error is overruled as to the remaining issues raised on appeal.
Judgment affirmed in part, and reversed and remanded in part.
VALEN and POWELL, JJ., concur.