THE STATE OF OHIO, APPELLANT, *v.* YATES, APPELLEE.
THE STATE OF OHIO, APPELLANT, *v.* ROSS, APPELLEE.

(No. 80-1010—Decided May 27, 1981.)

246

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Michael J. Smakula,* for appellant.

*Mr. William Fadel* and *Ms. Deborah J. Nicastro,* for appellee Yates.

*Mr. Michael Drain,* for appellee Ross.

CLIFFORD F. BROWN, J.  The sole question before this court is whether the evidence of earnings acquired by the Cuyahoga County Welfare Department through use of the authorization form signed by defendants violated their Fourteenth Amendment right to due process of law and must be suppressed in these criminal prosecutions. The determination by the trial judge granting the motion to suppress evidence is a final appealable order under Crim. R. 12(J).

The first application of the modern exclusionary rule regarding the use in a criminal trial of evidence obtained in violation of a constitutional right was in *Weeks* v. *United States* (1914), 232 U. S. 383, in which the United States Supreme Court held evidence seized by federal agents in violation of the Fourth Amendment right to be secure against unreasonable search and seizure is inadmissible in a resultant federal prosecution.

Then, in *Wolf* v. *Colorado* (1949), 338 U. S. 25, the court held that while the doctrine of *Weeks* v. *United States, supra,* makes evidence secured in violation of the Fourth Amendment inadmissible in federal court, it is not imposed on the states by the Fourteenth Amendment.

In *Mapp* v. *Ohio* (1961), 367 U. S. 643, 655-657, the court held that all evidence obtained by search and seizure in viola-

tion of the Fourth Amendment to the United States Constitution is inadmissible in a criminal trial in a state court through the Due Process Clause of the Fourteenth Amendment.

The basic contention of appellees is that the use of the release form signed by the defendants for the county welfare department and the transfer of earnings information obtained thereby to the county prosecutor, in spite of promises of confidentiality and use of such information for administrative purposes only, violates the requirements of fundamental fairness inherent in the right of due process of law under the Fourteenth Amendment.[2] We disagree.

The Court of Appeals, in affirming the trial court's suppression order, based its decision on its finding that "the County Welfare Department's subsequent transfer of information to the Cuyahoga County Prosecutor's Office violates fundamental conceptions of justice and offends the community's sense of fair play and decency, thereby violating the due process clause of the United States Constitution," citing *United States* v. *Lovasco* (1977), 431 U. S. 783; *Rochin* v. *California* (1952), 342 U. S. 165; *Lisenba* v. *California* (1941), 314 U. S. 219; and *Santobello* v. *New York* (1971), 404 U. S. 257.

These cited cases are so far wide of the mark factually as to be useless as precedent in deciding the welfare fraud case *sub judice.* In *United States* v. *Lovasco, supra,* the court held an 18 month delay between the commission of an offense and indictment not such an oppressive delay and denial of speedy trial rights as to be a violation of defendant's constitutional rights under the Due Process Clause. In *Rochin* v. *California, supra,* defendant was forcibly administered an emetic, causing him to vomit several capsules containing morphine, evidence used against him at trial. His conviction was reversed because the method used to obtain this evidence so shocks the conscience as to violate due process of law. In *Lisenba* v. *California, supra,* the holding of a prisoner incommunicado for long periods under intense questioning without aid of counsel re-

---

[2] Section 1 of the Fourteenth Amendment to the United States Constitution, in pertinent part, provides:

"***[n]or shall any State deprive any person of life, liberty, or property, without due process of law;***."

quired close scrutiny of the record to determine whether his confession was obtained in a manner violative of due process under the Fourteenth Amendment. In *Santobello* v. *New York, supra,* a plea bargain was involved where the defendant withdrew his plea of guilty in exchange for the prosecutor's agreement to make no recommendation as to sentence. Months later a new prosecutor in violation of this agreement recommended to the trial judge the maximum sentence which was then imposed.

In the present welfare fraud cases, the methods used in obtaining relevant evidence was not so shocking as to violate due process as in *Rochin* v. *California, supra.* On the contrary it calls for the application of the rationale of *United States* v. *Russell* (1973), 411 U. S. 423, where an undercover narcotics agent infiltrated a narcotics-making operation, and furnished defendant an ingredient in return for a share of the finished product. Such evidence used at defendant's trial did not violate fundamental principles of due process.

See, also, *Hoffa* v. *United States* (1966), 385 U.S. 293, where defendant Hoffa during a criminal trial gave incriminating information to Partin, a paid government informer, upon whom Hoffa relied, and in whom Hoffa had misplaced confidence that Partin would not reveal his wrongdoing. The United States Supreme Court held in *Hoffa, supra,* that there was no violation of the Fifth Amendment privilege against compulsory self-incrimination and the Sixth Amendment right to counsel, and that the use of Partin as a secret informer was not *per se* unconstitutional and did not violate due process of law requirements.

The welfare department authorization form to release employee earnings information signed by defendants Yates and Ross, and the earnings information obtained as a result thereof, as in *Hoffa, supra,* did not invade the rights of defendants under the Fourteenth Amendment Due Process Clause. Defendants contend that the agreement between defendants and the county welfare department upon the signing of this release of information form was a promise by the county welfare department that the earnings records would remain confidential and be used for administration purposes only, and not for criminal prosecution of the defendants. Any breach of

confidentiality by the action of the county welfare department in transferring the employer's records of earnings of the defendants to the county prosecutor for his use to prosecute them for welfare fraud does not violate any right of privacy of defendants to these records.[3]

The conduct of the county welfare department regarding the earnings records of defendants Yates and Ross does not rise to the level of violating "fundamental conceptions of justice," as referred to in *Lovasco, Rochin,* and *Lisenba, supra.* In fact, in *Lovasco, supra,* the prosecutorial misconduct was not held violative of defendant's rights.

The release of an employee earning information form which develops and reveals the truth about the eligibility of a recipient for public assistance and the information elicited by the county welfare department as a result thereof, do not offend our conception of justice and sense of fair play.[4]

The ruling of the trial court suppressing the information obtained from the defendants' employers was erroneous, and the judgment of the Court of Appeals, in each case is hereby reversed and the causes remanded to the trial court for further proceedings.

*Judgments reversed and causes remanded.*

CELEBREZZE, C. J., WHITESIDE and HOLMES, JJ., concur.
W. BROWN, POTTER and LOCHER, JJ., dissent.

---

[3] There is no statutory or common law right of an employee to privacy concerning his employer's earnings records, and there is no reason for the employee to expect such privacy. The employer may reveal the earnings records, or the contents thereof, to anyone. Neither is there any constitutional provision preventing revelation of earnings records to anyone. There is no judicial precedent establishing such a right of privacy or expectation of privacy regarding earnings records.

[4] There is another reason not to apply the exclusionary rule in this case. Even if the authorization form were not signed by the defendants, their prosecution for welfare fraud could have proceeded through the use of subpoenas of employers' records and of witnesses' testimony to establish earnings information. Therefore, if the use of this authorization form to gain information and the gaining of such information by its use was error, it was harmless error. *Chapman* v. *California* (1966), 386 U. S. 18, 24.

POTTER, J., of the Sixth Appellate District, sitting for P. BROWN, J.

WHITESIDE, J., of the Tenth Appellate District, sitting for SWEENEY, J.

POTTER, J., dissenting. The majority does not find the egregious state conduct shocking or offensive; suffice it to say I do and cannot judicially condone it. Historically the exclusionary rule is invoked where evidence is obtained in violation of the Fourth Amendment, where confessions or identification testimony are obtained in violation of the Fifth and Sixth Amendments and where, as in the case *sub judice,* evidence is obtained by methods which so violate concepts of fundamental fairness as to also constitute a violation of due process. The United States Supreme Court in *United States* v. *Lovasco* (1977), 431 U. S. 783, at page 790, stated the following applicable legal principle:

"We are to determine only whether the action complained of * * * violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' * * * and which define 'the community's sense of fair play and decency' * * *."

The Court of Appeals in the case *sub judice* phrased the violation of due process as follows:

"We agree with the trial court's conclusion that the County Welfare Department promised welfare recipients who signed the release 'that it would not utilize the information in proceedings outside of the Welfare Department.' We find that the County Welfare Department's subsequent transfer of the information to the Cuyahoga County Prosecutor's Office violates fundamental conceptions of justice and offends the community's sense of fair play and decency, thereby violating the due process clause of the United States Constitution."

It has not been challenged that the conduct of the welfare department was not state action. The fact that the state has or had a constitutionally accepted procedure to obtain evidence does not authorize the use of a constitutionally offensive procedure. While I do not condone the action of the defendants, nevertheless I look first to the state to be fair in its dealing

with its citizens.[5] It was not, and it cannot now take advantage of its own duplicity. I would therefore affirm.

W. BROWN, J., and LOCHER, J., concur in the foregoing dissenting opinion.

---

[5] See *Mapp* v. *Ohio* (1961), 367 U. S. 643, at 659, 660, as follows:

"Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. As Mr. Justice Brandeis, dissenting, said in *Olmstead* v. *United States,* 277 U. S. 438, 485 (1928): 'Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example . . . . If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.' "

"The ignoble shortcut to conviction left open to the State tends to destroy the entire system of constitutional restraints on which the liberties of the people rest."