THE STATE OF OHIO, APPELLANT, *v.*
HUGHES, APPELLEE.
THE STATE OF OHIO, APPELLANT, *v.*
CHUBB, A.K.A. CAMPBELL, A.K.A.
CASH, APPELLEE.

(Nos. 42791 and 42792—Decided July 30, 1981.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellant.

*Mr. Hyman Friedman,* for appellee Willie Hughes.

*Mr. George E. Ressler,* for appellee Shirley A. Chubb, a.k.a. Shirley Campbell, a.k.a. Shirley Cash.

DAY, J. Defendants-appellees (defendants) in these consolidated cases were indicted for grand theft based on welfare fraud. Motions to suppress were granted in both cases because of the claimed misuse by the state of compulsorily disclosed social security numbers to establish the fraud. The state filed notices of appeal in each case. Each recited that the appeal was from the "judgment of the

Court of Common Pleas for Cuyahoga County, Ohio, entered on August 13, 1980, granting defendant's motion to suppress evidence."

For reasons adduced below the judgments are reversed:

## I

The appeals are governed by Crim. R. 12(J) which requires a certification[1] *and* notice of appeal by the prosecutor to be filed with the clerk of the trial court "within seven days after the date of the entry of the judgment or order granting the motion" to suppress.

If August 13, 1980, was in fact the date the respective judgments were entered, both appeals would be untimely. For the time period for a prosecution appeal under Crim. R. 12(J) begins to run when "it is filed with the clerk of the trial court for journalization," App. R. 4(B). In these cases the record reveals that in each case the lower court order was incorporated by reference in a "journal entry" stamped by the clerk of the trial court "Received For Filing Aug. 18, 1980." The notices of appeal were timely because each was stamped by the clerk "Filed Court of Appeals, Aug. 22, 1980," well within the seven day limit.

However, time for the notice of appeal is not the only jurisdictional element in a Crim. R. 12(J) appeal. The state's certification[2] is specifically made a necessary adjunct under the Rule. In this case, the requisite certifications were not filed with the notice of appeal, but were filed separately on August 22, 1980, and thus were within the time limit imposed by Crim. R. 12(J).

---

[1] The Clerk of Courts for Cuyahoga County, Ohio, services both the Court of Common Pleas (trial courts) and the Court of Appeals of Ohio, Eighth District.

[2] Crim. R. 12(J) mandates that the required certification make a specific recital as a condition of appeal:

"The state may take an appeal as of right

These conclusions clear the way for consideration of the appeals on their merits.

## II

### A

### *Defendant Willie Hughes*

On June 18, 1976, defendant Hughes applied to the Cuyahoga County Welfare Department for aid to dependent children benefits. She provided the County Welfare Department her social security number at the department's request. She was not told what use would be made of the number.

Sometime later the Hughes' social security number was supplied to the state of Ohio for use in a "computer match" with information obtained from the Social Security Administration. The yield from the match was the name of an employer of the defendant. The County Welfare Department then asked Mrs. Hughes to sign an authorization form to enable it to obtain information from her employer.

The form contained a series of recitals over Mrs. Hughes' signature which are germane to her subsequent indictment.

After authorizing her employer to release her earnings record the form recited in pertinent part:

"I understand that this information will be used for the purpose of determining my eligibility for public assistance and will be held in confidence.

"I understand that the information may show that I was receiving an incorrect amount of ADC; or it may show that I was receiving a correct amount of ADC.

"I understand that my failure to

---

* * * from the granting of a motion to suppress evidence if, in addition to filing a notice of appeal, the prosecuting attorney certifies that: (1) the appeal is not taken for the purpose of delay; and (2) the granting of the motion has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed."

release this information will result in the County Welfare Department's proposing to terminate my public assistance due to my failure to cooperate in establishing my eligibility for public assistance.

"Also I understand that my County Welfare Department may not release this confidential information to any person or agency for any purpose other than the administration of ADC without my written permission."

Eventually the welfare department sent Mrs. Hughes' employer the authorization form and received back the requested wage information which established that she had been employed from May 1, 1977 to April 30, 1978. Using the information acquired through the use of her social security number Hughes was indicted. The essential part of the indictment recited that she:

"[U]nlawfully and knowingly and by deception obtained or exerted control over warrants and money and food stamps of the value of $1,110.00 with the purpose to deprive the owner, Cuyahoga County Welfare Department, of said property or services.

"The value of said property or services being $150.00 or more. [*sic*]"

### B

### *Defendant Shirley Chubb*

This defendant applied to the Cuyahoga County Welfare Department for aid to dependent children benefits on April 1, 1976. She disclosed her social security number upon request. Defendant Chubb was not informed of the use to be made of her number. There ensued a process of employer identification by use of the number in a computer check of the welfare department and the State Employees Retirement System. This check was done by the Auditor of the state of Ohio. It revealed that defendant Chubb was employed by the Cleveland Board of Education between April 26, 1976 and November 30, 1977.

Upon request the department received Chubb's wage and employment information from the Cleveland Board of Education. The trial court found that the department had received no consent from Chubb authorizing the release of information[3] and that there was "no evidence that defendant Chubb had otherwise authorized her employer to release information which it provided to the Welfare Department."

The investigation dependent upon Chubb's social security number resulted in information leading to her indictment. The essence of the indictment charged that Chubb:

"[U]nlawfully and knowingly and by deception obtained or exerted control over money and warrants of the value of $2,974.00 with the purpose to deprive the owner, Cuyahoga County Welfare Department of said property or services * * * [*sic*].

"The value of said property or services being $150.00 or more[.] [*sic*]"

### C

The granting of motions to suppress in both cases raises three interrelated questions:

(a) Were the defendants entitled to notice of the use to which their social security numbers were to be put?

(b) If the answer to (a) is "yes," were notices given?

(c) And if the answer to (a) is "yes" and to (b) is "no," is suppression of the evidence an appropriate remedy?

### III

The first and most fundamental question is (a). Its resolution is a necessary preliminary to (b) and (c) and requires an examination and reconciliation of statutes.

Section 7(b) of the Privacy Act of 1974 (P.L. 93-579, 88 U.S. Stat. 1896,

---

[3] It is apparent in the context of the opinion that the trial court meant no written authorization had been received.

1909) was extant at all times relevant to these cases. It provides:

"Any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it."

A 1976 amendment to Section 405(c)(2), 42 U.S. Code (P.L. 94-455, Title XII, Section 1211[b], 90 U.S. Stat. 1525, 1711-1712) is claimed to be a repealer of Section 7(b). The amendment stipulates in part:

"(C)(i)  It is the policy of the United States that any State (or political subdivision thereof) may, in the administration of any tax, *general public assistance,* driver's license, or motor vehicle registration law within its jurisdiction, utilize the social security account numbers issued by the Secretary for the purpose of establishing the identification of individuals affected by such law, and may require any individual who is or appears to be so affected to furnish to such State (or political subdivision thereof) or any agency thereof having administrative responsibility for the law involved, the social security account number (or numbers, if he has more than one such number) issued to him by the Secretary.

"(ii)  If and to the extent that any provision of Federal law heretofore enacted is inconsistent with the policy set forth in clause (i) of this subparagraph, such provision shall, *on and after * * * [October 4, 1976,] be null, void, and of no effect."* (Emphasis added.)

However, by grounding relief on Section 7(b) in 1978, respectable authority[4]

has clearly implied the continuing vitality of that section despite the 1976 amendment to Section 405(c)(2), 42 U.S. Code. Moreover, the statutes are not in conflict. Section 7(b) requires disclosure of the intended use of social security numbers to detect fraud. The amendment to Section 405(c)(2), 42 U.S. Code, does not touch the disclosure requirement. It simply authorizes the use by a "State (or political subdivision thereof)" of social security numbers for a specific list of objectives including the "administration of * * * general public assistance * * *." Thus, the duty to disclose still obtains and was not satisfied.

Question (a) is answered "yes." Question (b) is answered "no," but question (c) must also be answered "no." Thus, although notice of the use of social security numbers in these cases was required, and not given, suppression of the information acquired is not the remedy. This somewhat anomalous result follows because recent Ohio precedent has established that notice identical to that received by defendant Hughes, *supra,* did not contravene that due process which is required by the United States Constitution. The use of the release form and social security numbers to obtain the earnings information did "* * * not offend * * * [the court's] conception of justice and sense of fair play" (footnote omitted) and the granting of a motion to suppress was reversed, *State* v. *Yates* (1981), 66 Ohio St. 2d 245, 250 [20 O.O.3d 236].

Chubb had no notice at all. The disposition of her appeal can be no different from that of defendant Hughes. Indeed, since the whole purpose of notice is to avoid misleading, lack of notice as to use,

---

[4] See *Greater Cleveland Welfare Rights Organization* v. *Bauer* (N.D. Ohio 1978), 462 F. Supp. 1313, 1321:

"Based on the foregoing, the Court concludes that defendants have in the past violated, and are continuing to violate, Section 7(b) of the Privacy Act of 1974. The Court further concludes that plaintiffs are entitled to relief in the form of an order requiring defendants to, in the future, comply with Section 7(b) of the Privacy Act of 1974. * * *"

even though required, may not be as misleading as notice which ambiguously recites the confidentiality of the use.[5]

### IV

All assignments of error in both cases have merit.

The judgments are reversed and the causes remanded for further proceedings according to law.

*Judgments reversed and causes remanded.*

KRUPANSKY, P.J., and PARRINO, J., concur.

---

[5] Cf. the form proffered to defendant Hughes and signed by her, *supra*.