DECISION
{¶ 1} Plaintiff-appellant, Sue H. Flore, appeals from a judgment entry and decree of divorce entered by the Franklin County Court of Common Pleas, Domestic Relations Division. Defendant-appellee, Richard D. Flore, has filed a conditional cross-appeal from the same judgment.
 {¶ 2} Trial court's judgment was entered after a contested hearing. The trial court found that the parties were married on August 10, 1991, and that no children were born of the marriage. The parties separated in December of 2001, but the trial court found that the duration of the marriage for property division purposes would nonetheless be from August 10, 1991 to the date of the final hearing on December 4, 2003. During the marriage Mr. Flore worked as a full-time teacher in the Columbus Public School System and supplemented his income with construction and landscaping work during the summer vacation. Mrs. Flore worked in information technology and software sales, enjoying an income of as much as $91,000 at the peak of the internet boom, followed by a precipitous decline with the "dot.com bust" of 1999. The court found that the parties for most of the marriage lived a very comfortable lifestyle with vacations, entertaining, and the ability to make luxurious improvements to the marital residence.
 {¶ 3} The trial court's allocation of marital assets addressed three principal assets that are at issue in the present appeal: (1) the valuation of the marital home on Samada Avenue in Worthington ("the Samada house"), and the parties' respective contributions thereto; (2) the status of a home under construction on Olentangy River Road in Columbus ("the Olentangy house"), titled in Mr. Flore's name, but equitably owned by Mr. Flore's cousin; and (3) the valuation and marital allocation of Mr. Flore's State Teachers Retirement System ("STRS") retirement pension. In addition, the trial court considered other assets including a property on Godown Road, a condominium in Florida, Mrs. Flore's ATT pension and 401K plan, Mr. Flore's investment accounts and life insurance, and the parties' social security interests.
 {¶ 4} The trial court ordered spousal support payable by Mr. Flore to Mrs. Flore of $1,000 a month for six months, and one dollar a month for an additional 12 months thereafter. The trial court retained jurisdiction over the amount but not the duration of this spousal support. The trial court ordered each party to be responsible for their own attorney's fees in the divorce, noting that Mr. Flore had already paid $4,000 towards Mrs. Flore's past fees.
 {¶ 5} Based on the assessed value of the various marital assets, including the retention of the marital residence (valued at $225,000, less a mortgage of $35,263) by Mrs. Flore, trial court found that Mrs. Flore was retaining net assets with a value of $311,326, and Mr. Flore was retaining net assets with a value $363,524. The court ordered an equalization payment from Mr. Flore to Mrs. Flore of $26,099, giving each party a distribution of $337,425 in net marital assets.
 {¶ 6} Mrs. Flore has timely appealed from the trial court's judgment and brings the following five assignments of error:
I. The Trial Court Erred When It Failed To Designate Certain Real Estate as Marital Property.
II. The Trial Court Erred When It Failed to Designate Certain Retirement Funds As Marital Property.
III. The Trial Court Erred When It Failed to Take Statutory Factors Regarding the Amount of Spousal Support Into Consideration.
IV. The Trial Court Erred When It Failed to Order Appellee to Pay Appellant's Attorney Fees.
V. The Trial Court Erred When It Failed to Designate Appellant's $6,000.00 as Separate Property.
 {¶ 7} Mr. Flore has timely appealed from the trial court's judgment and brings the following two assignments of error:
[1.] The trial court abused its discretion by rejecting the appellee's proposed valuation of the marital residence.
[2.] The trial court abused its discretion by ordering the appellant to pay spousal support.
In addition, it appears from the last paragraph of Mr. Flore's brief that his appeal is postured as a conditional cross-appeal:
For all these reasons, Mrs. Flore's five assignments of error should be overruled, and the judgment of the Franklin County Court of Common Pleas, Domestic Relations Division should be affirmed. However, if this Court sustains one or more of Mrs. Flore's assignments of error, Mr. Flore's two cross-assignments of error should also be sustained.
 {¶ 8} We will accordingly only proceed to address Mr. Flore's cross-appeal if we find error necessitating reversal based upon Mrs. Flore's assignments of error.
 {¶ 9} Mrs. Flore's first, second, and fifth assignments of error assert error by the trial court in classifying and allocating marital and separate property. Her third and fourth assignments of error assert that the trial court erred in calculating and awarding spousal support and attorney's fees. We will first address those assignments of error concerning the couple's marital and separate property.
 {¶ 10} The classification of property as either marital or separate, and the division of marital property, are governed by R.C. 3105.171.
"In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest."
R.C. 3105.171(B).
Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the martial property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
R.C. 3105.171(C)(1).
Section (F) of the statute provides the following factors to be considered in the division of marital property and any distributive award:
(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
(5) The economic desirability of retaining intact an asset or an interest in an asset;
(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
(9) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 11} The trial court is vested with broad discretion in dividing the marital assets pursuant to R.C. 3105.171.Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, for one. The trial court's determination will not be disturbed on appeal absent an abuse of discretion by the trial court. Id. The term "abuse of discretion" connotes more than a mere error in judgment; it means that the trial court's attitude in reaching its judgment was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 17. Because the statute specifies that division of marital property will not always be strictly equal if it is to be equitable, the mere fact that property division may be unequal will not, standing alone, constitute an abuse of discretion. Cherry v. Cherry (1981),66 Ohio St.2d 248, paragraph two of the syllabus.
 {¶ 12} Mrs. Flore's first assignment of error challenges the trial court's disposition of a home built at 7647 Olentangy River Road and titled in Mr. Flore's name. Mr. Flore testified that he held title merely as an accommodation party for his cousin, Gary Vivorito, who was unable to obtain a purchase and construction loan in his own name. Mr. Flore's position was that he had no actual financial interest in the property and had not contributed money from his own pocket to the acquisition or improvement of the property. The trial court agreed and concluded that Mr. Flore's participation in the transaction was as a strawman, and that he held no actual interest that should be included among the marital assets.
 {¶ 13} The question before us is whether the trial court erred in concluding that neither Mr. nor Mrs. Flore actually held an interest in the property so that it became marital property, or for that matter, the separate property of Mr. Flore. There is competent, credible evidence in the record in the form of Mr. Flore's testimony, which was not directly contradicted by Mrs. Flore, and certain documents introduced before the trial court to demonstrate that Mr. Vivorito had paid the funds necessary for the purchase of the lot and the construction of the home. According to the documentary evidence, Mr. Vivorito's material costs were in excess of $195,000. Mr. Flore testified that he and his wife had spent no money from their own pockets on the purchase or construction of the property. After the divorce was filed, Mr. Flore obtained an additional $80,000 construction loan on the property and Mrs. Flore waived her dower rights to the property in connection with that loan. Mr. Vivorito made the payments on the loan and continued to contribute his own funds into construction costs. Significantly, Mrs. Flore's testimony corroborated that of Mr. Flore as to the purpose of the transaction, which was to facilitate construction by Mr. Vivorito of a home that he was unable to hold in his own name.
 {¶ 14} Considering this evidence before the trial court, we find that there was no abuse of discretion on the part of the trial court in concluding that the Olentangy River Road property should not be treated as marital property, and that no value should be assigned thereto for purposes of the marital property division. Mrs. Flore's first assignment of error is accordingly overruled.
 {¶ 15} We will next address Mrs. Flore's fifth assignment of error, which asserts that the trial court erred when it failed to include a $6,000 pre-marital, and, therefore, separate, interest in the marital residence by Mrs. Flore. Prior to the marriage, Mrs. Flore purchased Mr. Flore's father's one-half interest in the home, which he owned jointly with Mr. Flore. This assertion is based upon uncontroverted evidence introduced by Mrs. Flore at trial, in the form of her own testimony and a land purchase contract document indicating that she had paid $6,000 for her future father-in-law's one-half interest in the home.
 {¶ 16} There is no indication that the trial court erred in this respect, at least not prejudicially to Mrs. Flore. Based upon this testimony, both parties came into the marriage with $6,000 of equity. The trial court also noted that Mr. Flore had through his own skilled construction labor made many upgrades and improvements to the home. Nevertheless, the trial court ultimately concluded that the entire net value of the marital home was marital property, without regard to premarital financial and labor contributions.
 {¶ 17} There is accordingly no evidence the trial court failed to consider the $6,000 contributed by Mrs. Flore to purchase a one-half interest in the marital property prior to marriage. Obviously, the court found the parties had equal positions in the equity of the home from the beginning of the marriage. Mrs. Flore's fifth assignment of error is accordingly overruled. Our findings in this respect will also bear on our resolution of Mrs. Flore's second assignment of error discussed below.
 {¶ 18} Mrs. Flore's second assignment of error asserts that the trial court erred in its setting the value of the marital portion of Mr. Flore's STRS retirement account.
 {¶ 19} For most of his career, Mr. Flore has been employed as a teacher in the public school system. Prior to his marriage, at a time when he had already accumulated eight years of STRS credit, Mr. Flore left the teaching profession and cashed out his retirement to invest in a new business. The business failed, and Mr. Flore returned to teaching. During the course of his marriage, Mr. Flore exercised his option to repurchase roughly 5.1 years out of the eight years he had previously cashed out. The amount contributed from marital funds towards this buy back was set by the court at $21,409.66, and this amount is not disputed by the parties. The trial court determined this buy back price constituted the marital portion of these 5.1 years of STRS credit. It awarded Mrs. Flore the sum of $10,500, plus interest, as an approximate reimbursement of one-half of the amount expended by the couple on the buy back. The court set interest at seven percent to compensate her for the time value of money since the buyback.
 {¶ 20} It is undisputed at this point that Mrs. Flore is entitled to a marital interest in the subsequent 12.25 years of STRS credit, representing the time earned by Mr. Flore for his teaching service during the duration of the marriage. Mrs. Flore asserts, however, that she is entitled to have 17.35 credited years of STRS retirement, including the 5.1 years repurchased, included as marital property. The expert evidence presented at trial on the actuarial value of the pension clearly established that one-half of the present value of 17.35 years of STRS service will give a much higher figure than one-half of 12.25 years of service plus $10,500 at seven percent interest.
 {¶ 21} The question before us, therefore, is whether the trial court abused its discretion in determining that the disputed 5.1 years of STRS credit were more akin to a separate asset, "acquired" by Mr. Flore through his labor prior to marriage, rather than a marital asset "acquired" by the couple through financial contribution to the buy back during the course of the marriage. We find that the trial court did not abuse its discretion in this determination.
 {¶ 22} There is no definitive authority, either under statute or case law, on the question of allocation as marital or separate property of retirement service credit earned prior to a marriage, cashed out, then repurchased with marital funds. It is probably best not to establish a hard-and-fast rule on this question, as the equities of such a division can vary enormously from case to case. The statute does not specifically address this situation, as R.C. 3105.17(A)(3)(a) goes no further than to define as marital property retirement benefits "acquired" by either or both of the spouses during the marriage, without elaborating on the definition of acquisition in ambiguous circumstances such as these. In a comparable case, Okos v. Okos (2000),137 Ohio App.3d 563, the Sixth District Court of Appeals concluded that portions of a police pension acquired through military service accruing prior to marriage, but purchased for police retirement credit during the course of marriage, would be separate property. There are enough factual distinctions in that case, however, to give us reason to avoid blindly applying it to the present facts: e.g., the husband's pension in Okos was argued to be at least partially constituted by disability pay, and the wife had never introduced any evidence of pension values that separately broke out the purchased military time. Id. at 571.
 {¶ 23} The trial court in the present case weighed the numerous equitable issues and concluded that Mr. Flore had an existing right to repurchase the cashed-out retire-ment credits before the marriage. Because this right was established prior to the marriage, the repurchased credits could not have been acquired during the course of the marriage without the essential premarriage act of Mr. Flore, i.e., the 5.1 years of teaching employment. This is a reasonable and equitable interpretation of "acquisition" as used in the statute, at least as it relates to the situation of these particular parties. Mrs. Flore raises on appeal the existence of various equitable arguments. The most valid one was that Mrs. Flore, at the time she contributed to the repurchase, believed herself to be investing in a joint retirement, not just her husband's. However, the record demonstrated that these equitable considerations were in every case counter-balanced by those weighing in favor of the trial court's decision. In particular, the court noted that Mr. Flore, by accepting the termination date of the marriage as the date of final hearing rather than the date of separation, had added two years of STRS credit to the marital assets, to Mrs. Flore's considerable benefit.
 {¶ 24} Further, the earning of retirement credit through actual employment is the sine qua non of entitlement to such credit. Investment by the couple in the repurchase of credits was an optional investment decision that was only made possible by Mr. Flore's prior employment. Mr. Flore, had the couple not repurchased the credit during the marriage, would have been fully entitled to repurchase the credits after the termination of the marriage, as indeed he testified he intended to do for the remaining unrepurchased 2.9 years of cashed-out retirement. The award of one-half of the amount spent on the repurchase, plus interest, coupled with the two years additional STRS credits was an equitable resolution of the problem. There is, therefore, nothing "unreasonable, arbitrary, or unconscionable" in the trial court's allocation of the STRS funds, and Mrs. Flore's second assignment of error is overruled in this respect.
 {¶ 25} Mrs. Flore's second assignment of error further asserts that, even if the court's valuation of the STRS buy back is accepted, the trial court erred, through "simple oversight," by failing to include the $10,500 plus interest in its allocation of marital property. Mr. Flore argues to the contrary that the trial court's failure to include the $10,500 in its distribution worksheet simply reflects the trial court's decision to award, free and clear, the marital residence and the marital portion of the STRS retirement to Mrs. Flore and Mr. Flore respectively.
 {¶ 26} The trial court's appended worksheet does not include any item specifically accounting for the court's previously specified $10,500 credit due Mrs. Flore. Nor does the worksheet itemize any separate property interest in the marital residence for either party. The court otherwise itemized and totaled all other assets referenced in the decision, finding that the total amount of marital net assets distributed to Mrs. Flore was $311,326.35, and to Mr. Flore was $363,523.85. As a result, Mr. Flore was ordered to pay Mrs. Flore one-half of the difference to equalize the distribution. The figure given by the court in referencing the marital portion of Mr. Flore's STRS pension, $183,651.04, clearly refers to the expert evidence heard at trial placing an actuarial valuation on only 12.25 years of STRS service.
 {¶ 27} There is no explicit counterpart to the trial court's desire to award $10,500 plus interest to Mrs. Flore as her share of the marital portion of the repurchased 5.1 years of STRS credit. Clearly it was not included in the $183,651.04 valuation of the marital portion of STRS included in the husband's assets. The court did state, however, that of the various means of allocating the marital portion of the STRS pension, the best was one that allowed Mrs. Flore to retain the marital residence free and clear. "[Mrs. Flore] was adamant about wanting to retain the [marital] home. In order to divide the assets proportionately, with [Mrs. Flore] retaining the largest asset, (Samada property), the court awards [Mr. Flore] his STRS pension in its entirety * * *" Taken in conjunction with the court's choice not to allocate any portion of the marital residence as separate property, and the court's remarks elsewhere regarding Mr. Flore's contribution to the value of that property through his labor and skill, rather than presuming some accidental ommission on the part of the trial court it is more reasonable to deduce that the court intended the entire marital portion of the STRS pension, however calculated, to be offset by an award of the marital residence to Mrs. Flore, regardless of any separate property interest either party might be able to demonstrate. Since the court manifestly intended to award this amount Mrs. Flore's second assignment of error accordingly lacks merit in respect as well, and is overruled.
 {¶ 28} We now turn to Mrs. Flore's third assignment of error, which asserts that the trial court erred in setting spousal support in the amount of $1,000 per month for six months, followed by a token $1.00 per month for 12 months. The trial court retained jurisdiction over the amount, but not the duration, of the award.
 {¶ 29} The needs of the party receiving spousal support and the ability of the paying party to pay such support are to be determined by the trial court with reference to statutorily enumerated factors in R.C. 3105.18(C):
(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
(c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
(g) The standard of living of the parties established during the marriage;
(h) The relative extent of the education of the parties;
(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
(l) The tax consequences, for each party, of an award of spousal support;
(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
(n) Any other factor that the court expressly finds to be relevant and equitable.
(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.
 {¶ 30} Mrs. Flore specifically argues that the trial court improperly imputed an income more in keeping with her information services industry earnings in the mid-90's, before the "dot.com bubble" burst rather than her actual recent earnings of $10 per hour working for a florist. Mrs. Flore also points out that the duration of the marriage, set by the court at 12 years, supported a much longer term than six months of meaningful spousal support awarded by the court.
 {¶ 31} The trial court, having considered the enumerated factors under R.C. 3105.18(C), has wide discretion in setting the amount of spousal support. Bowen v. Bowen (1999),132 Ohio App.3d 616. We first note that the standard of living argument raised by Mrs. Flore under R.C. 3105.18(C)(1)(g) is largely inapplicable in the present case, because both parties have experienced a precipitous decline in their standard of living primarily due to Mrs. Flore's loss of her former high-paying jobs in the information services industry. It would be unreasonable to expect Mr. Flore to pay a higher amount on the basis that Mrs. Flore was entitled to maintain that same standard of living, as the circumstances have changed for both parties. The totality of the factors in the present case, however, support the award actually entered by the trial court. This is particularly so since the trial court essentially granted a one-year additional period of continuing jurisdiction. Thus, the court could, if Mrs. Flore's circumstances warranted, award an increase in spousal support.
 {¶ 32} Most significantly in the present case, the trial court found that Mrs. Flore maintained the ability to earn, if not her prior high wages, at least a significantly higher figure than she was currently earning. Coupled with the ages and physical, mental, and emotional condition of the parties, along with the relative extent of education of the parties, R.C.3105.18(C)(1)(d) and (h), the trial court's determination does not represent an abuse of discretion. Even more significant, both parties received substantial assets, R.C. 3105.18(C)(1)(i). Mrs. Flore's choice to retain and maintain the Samada house seems to be the real cause of any subsistence pressures. Examining all of these factors, we find that the spousal support awarded by the trial court is reasonable both in amount and duration, and Mrs. Flore's third assignment of error is overruled.
 {¶ 33} Mrs. Flore's fourth assignment of error asserts that the trial court erred in ordering Mr. Flore to pay only $4,000 of her attorney fees, when she had incurred almost $19,000 at the time of the final decree. Pursuant to R.C. 3105.18(H), the court "may award reasonable attorney's fees to either party at any stage of the proceedings, * * * if it determines that the other party has the ability to pay the attorney's fees" and the party seeking fees would be "prevented from fully litigating that party's rights and adequately protecting that party's interests" in the absence of an award of fees. An award of fees by the trial court pursuant to R.C. 3105.18(H) will not be reversed absent an abuse of discretion by the trial court. Rand v. Rand (1985),18 Ohio St.3d 366, 369.
 {¶ 34} We have already found that the trial court made reasonable assumptions regarding Mrs. Flore's earning potential and that both parties received substantial assets in the property division. We, therefore, find that the trial court's determination with respect to fees did not constitute an abuse of discretion, as neither party was precluded from litigating their rights and the parties are in a relatively equal posture with respect to their ability to pay their respective fees. Mrs. Flore's fourth assignment of error is accordingly overruled.
 {¶ 35} In summary, Mrs. Flore's first, second, third, fourth and fifth assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations is affirmed.
Judgment affirmed.
Bryant and Petree, JJ., concur.
CHRISTLEY, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.